IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN B. YARBROUGH,　　　　　　　　　:

　　　　Petitioner,　　　　　　:

　　　　　　　　　　　　　　　　　　Case No. 3:08-cv-123
　　　　vs.　　　　　　　　:

　　　　　　　　　　　　　　　　JUDGE WALTER HERBERT RICE
STUART HUDSON, Warden,　　　　:

　　　　Respondent.　　　　　:

---

DECISION AND ENTRY ADOPTING REPORT AND RECOMMENDATIONS OF THE
MAGISTRATE JUDGE (DOC. #33) IN THEIR ENTIRETY AND OVERRULING
PETITIONER'S OBJECTIONS THERETO (DOC. #35); JUDGMENT TO ENTER IN
FAVOR OF RESPONDENT AND AGAINST PETITIONER; ANTICIPATED REQUEST
FOR CERTIFICATE OF APPEALABILITY AND REQUEST TO APPEAL IN FORMA
PAUPERIS DENIED; TERMINATION ENTRY

---

In 1997, Petitioner Kevin Yarbrough was found guilty of aggravated murder

and conspiracy to commit aggravated murder in connection with the death of

Wilma Arnett. He was originally sentenced to death. However, because he later

was found to be mentally retarded and ineligible for the death penalty, that

sentence was later reduced to life imprisonment with parole eligibility after 30

years. *See Atkins v. Virginia*, 536 U.S. 304 (2002).

After unsuccessfully pursuing post-conviction relief in state court, Yarbrough

filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, asserting 14

grounds for relief. He later withdrew Grounds 1, 3, and 14. On December 28,

2009, Magistrate Judge Merz issued a Report and Recommendations (Doc. #33),

recommending that the Petition be dismissed with prejudice.  He found some of the remaining claims to be procedurally defaulted, and found all of the claims to be meritless.  On January 14, 2010, Petitioner filed his Objections to the Report and Recommendations (Doc. #35).  Respondent filed a Response on February 25, 2010 (Doc. #37).[1]

Based upon the reasoning and citations of authority set forth in the Report and Recommendations of the United States Magistrate Judge (Doc. #33), as well as upon a thorough *de novo* review of this Court's file and the applicable law, said Report and Recommendations are adopted in their entirety.  Petitioner's Objections (Doc. #35) are overruled.  Judgment will be entered in favor of Respondent and against Petitioner, dismissing the Petition for Writ of Habeas Corpus, with prejudice, on each of the 11 remaining grounds for relief.

In so ruling, the Court makes the following non-exclusive observations with respect to Petitioner's Objections:

_____

[1] In his Response, Respondent argues that Petitioner's Objections were not filed within the 14 days allotted by Fed. R. Civ. P. 72(b) and should be stricken. Respondent concedes that the Report and Recommendations indicate that, pursuant to Fed. R. Civ. P. 6(d), the 14-day period "is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D)." Respondent correctly notes that because Petitioner was served electronically, the subsections of the rule cited by the Magistrate Judge do not apply.  Nevertheless, Section II(B)(4) of the Court's Electronic Filing Policies and Procedures Manual specifically states that "[p]arties served electronically are entitled to the same three-day extension of time to respond as if they had been served by mail."  Therefore, the result is the same. Petitioner's Objections are deemed to be timely filed.

**GROUND TWO:** The trial court violated petitioner Yarbrough's right to compulsory process under the Sixth and Fourteenth Amendments to the United States Constitution when it excludes [sic] evidence that tends to show someone other than the accused committed the crime in a capital trial for aggravated murder. The exclusion of such evidence also violates the petitioner Yarbrough's right to due process under the Fourteenth Amendment to the United States Constitution.

Calvin Davis was a drug dealer who allegedly hired Petitioner to kill informant Wilma Arnett. Davis died in prison prior to Petitioner's trial. The trial court excluded evidence that Davis told fellow inmate Kenneth Henderson that Tyrone McGhee, Jermaine Jelks, and Darren Taborn killed Arnett, and then came to his house to wash off the blood.

Petitioner argued that Davis's statement to Henderson was admissible under Ohio Rule of Evidence 804(B)(3) as a statement against his penal interest. The Ohio courts disagreed. This Court lacks subject matter jurisdiction to hear his claim, as federal habeas courts do not sit to correct errors of state evidentiary law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Ohio courts also rejected his alternate argument that exclusion of the statement violated Petitioner's fundamental due process rights. The Ohio courts found that Petitioner's reliance on *Chambers v. Mississippi*, 410 U.S. 284 (1973), was misplaced.

The Magistrate Judge agreed on both accounts. Petitioner generally objects to the Magistrate Judge's analysis, reiterating the same arguments previously made. Those Objections are meritless. For the reasons set forth in the Magistrate Judge's Report and Recommendations, the Court finds that the Ohio Supreme

3

Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented, and is not contrary to, or an unreasonable application of, *Chambers*.

> **GROUND FOUR:** Prosecutorial misconduct throughout petitioner Yarbrough's capital trial denied petitioner Yarbrough his due process right to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution.

Petitioner cited four instances of alleged prosecutorial misconduct, all occurring during closing argument: (1) the prosecutor told the jury that Petitioner could not "explain away" the prosecution's evidence; (2) the prosecutor told the jury that sometimes the lack of evidence can be evidence; (3) the prosecutor gave misleading examples from everyday life to illustrate "reasonable doubt;" and (4) the prosecutor misstated the evidence when he said that Tonya Counts saw Petitioner with Arnett on the night of the murder; Counts never actually positively identified Petitioner.

The Magistrate Judge found that the first three claims were procedurally defaulted because defense counsel failed to make a contemporaneous objection at trial.  Citing *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), Petitioner argues that because Ohio has not consistently enforced its procedural rules in capital cases, there is no procedural default.  In support, Petitioner cites to several death penalty cases in which appellate courts have overlooked the "waiver" of certain issues and reached the merits of claims that were not raised in a timely manner.  These cases, however, do not specifically deal with the contemporaneous objection rule.

4

In contrast, in the Report and Recommendations, the Magistrate Judge cited numerous cases in which the contemporaneous objection rule was enforced in capital cases. *See Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  For this reason, the Court agrees that the first three prongs of Petitioner's claim are procedurally defaulted.

For the reasons set forth in the Report and Recommendations, the Court also agrees that all four prongs of Petitioner's claim of prosecutorial misconduct fail on the merits.  Petitioner's Objections with respect to the merits of this claim are overruled.

> **GROUND FIVE:** When the State failed to introduce sufficient evidence of aggravated murder, the resulting conviction deprived petitioner Yarbrough of substantive and procedural due process as guaranteed by the Eighth, Ninth, and Fourteenth Amendments of the United States Constitution.

Petitioner generally objects to the Magistrate Judge's conclusion that the state courts reasonably applied federal law in determining that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As before, Petitioner points to the alleged lack of physical evidence, the alleged bias of the witnesses

who testified against him, and the numerous alleged inconsistencies in their testimony. For the reasons set forth in the Report and Recommendations, the Court overrules Petitioner's Objections with respect to this claim.

> **GROUND SIX:** When defense counsel failed to adequately voir dire potential jurors, impeach a material witness, and object to constitutional errors, petitioner Yarbrough was deprived of the effective assistance of counsel as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

> **GROUND SEVEN:** Petitioner Yarbrough was denied his right to effective assistance of counsel when counsel failed to adequately investigate, prepare, and present evidence in Yarbrough's defense as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> **GROUND EIGHT:** Petitioner Yarbrough was denied his right to effective assistance of counsel when counsel failed to confront, cross-examine, and impeach Jermaine Jelks with prior inconsistent statements made to police, in violation of his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> **GROUND NINE:** Petitioner Yarbrough was denied his right to effective assistance of counsel when counsel failed to confront, cross-examine, and impeach Annette Simmons with prior inconsistent statements made to police, in violation of his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> **GROUND TEN:** Petitioner Yarbrough was denied his right to effective assistance of counsel when counsel failed to confront, cross-examine, and impeach Jewel Davis with prior inconsistent statements made to police, in violation of his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> **GROUND ELEVEN:** Petitioner Yarbrough was denied his right to effective assistance of counsel when counsel failed to prepare and present an adequate defense, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

For the reasons set forth in the Magistrate Judge's Report and Recommendations, the Court finds that the state court's decisions on Petitioner's claims of ineffective assistance of counsel were neither contrary to, nor an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner's Objections with respect to these six claims are overruled.

> **GROUND TWELVE:** Petitioner Yarbrough was denied his right to a fair trial when the prosecution violated *Brady* by failing to disclose to the defense that a witness for the prosecution had testified in exchange for sentence reduction on unrelated charges, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

At trial, Vance Short testified that Petitioner had told him that he "made sure the bitch got what she deserved."  Petitioner argues that the prosecution's failure to disclose the existence of an agreement that Short would receive a reduced sentence in exchange for this testimony constituted a *Brady* violation.  *See Brady v. Maryland*, 373 U.S. 83 (1963).  The Third District Court of Appeals, however, found no tangible evidence that any such agreement existed.

The only evidence presented was an unauthenticated letter from Short to an attorney he hoped to retain to file a motion to reduce his sentence.  In that letter, he indicates that when he asked a detective who worked on the Arnett case for a letter supporting his request to the Parole Board for Shock Probation, she responded quickly and favorably "because of my cooperation."  Ex. FF to Ex. 13-6 to Return of Writ.

The Magistrate Judge agreed that nothing in this letter suggests that Short was promised anything in exchange for his trial testimony.  He also noted that even if there were sufficient evidence of an agreement, it is questionable whether the suppression of that evidence was material, particularly in light of the fact that other witnesses also testified that Petitioner said that Arnett got what she deserved.

In his Objections to the Report and Recommendations, Petitioner argues that the detective's willingness to provide Short a letter of support suggests that there was an agreement that Short would be compensated for his contributions.  He further argues that, in addition to the letter, the circumstances of Short's incarceration support an inference that a tacit agreement existed.  He maintains that Short was kept in custody to ensure that he would be available to testify at Petitioner's trial.

Because the existence of an agreement is a question of fact, the court must presume that the state court's finding with respect to this issue is correct unless Petitioner rebuts it with clear and convincing evidence to the contrary.  *See Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002).  Petitioner's efforts in this area fall short.  The Court therefore overrules Petitioner's Objection.[2]  The Court finds that

---

[2] Petitioner also objects to the Magistrate Judge's assessment of the significance of the alleged failure to disclose the existence of the agreement. However, absent clear and convincing evidence that an agreement existed, the Court need not reach this prong of the *Brady* analysis.

the state court's decision with respect to this claim was not an unreasonable application of *Brady*.

> **GROUND THIRTEEN:** Petitioner Yarbrough was denied his right to a fair trial when the prosecution violated *Brady*, by knowingly withholding exculpatory evidence from the defense, in violation of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Petitioner maintains that the State withheld material impeachment evidence regarding Jermaine Jelks. Petitioner classifies Jelks as a crucial witness. Jelks testified at trial that he was present when Davis and McGhee talked about hiring Petitioner to kill Arnett, and was present in a van when Petitioner was given $10,000 to do so. At Petitioner's trial, during the State's redirect, Jelks testified that, while he was in jail with James Bussey, Bussey told him that "we killed her." The prosecution then argued that "we" meant Bussey and Petitioner.

Orlande Clark was another inmate who was allegedly present during the conversation between Bussey and Jelks. Bussey's trial attorney, Richard Mayhall, interviewed Clark. Clark told Mayhall that when a detective came to speak to him about Arnett's murder and asked him about Bussey's alleged confession, Clark denied that Bussey had admitted to any involvement in the murder. Mayhall Aff. at ¶¶ 3-5; Ex. VV to Ex. 13-11 to ROW. According to Mayhall, the State intended to provide him with Clark's statement as *Brady* material in connection with Bussey's trial. *Id.* at ¶ 8.

With respect to his own trial, Petitioner maintains that the State should have

9

disclosed the fact of Clark's interview with the detective as well as its contents. He argues that this information would have shown that Jelks testified falsely about his conversations.  Clark's statement also contradicted Jelks' trial testimony that if he knew who had killed Arnett, he would tell in order to get out of prison early. According to Petitioner, had the jury known of Clark's statement, it would have discounted Jelks' testimony altogether.

The trial court first questioned the truthfulness of Clark's statement to Mayhall, noting that there was no evidence to corroborate Clark's claim that he had spoken to the detective or had told the detective that Bussey had denied any involvement in Arnett's murder.  Assuming that Clark's alleged conversation with the detective took place, it was apparently never recorded or reduced to writing. The trial court also noted that it was defense counsel who "opened the door" to this line of questioning during Jelks' cross-examination.  Under these circumstances, the trial court found no *Brady* violation.  The state appellate court affirmed, again noting that other than Mayhall's affidavit, there was no written record of Petitioner's version of events.

The Magistrate Judge accepted Mayhall's affidavit as competent proof of what Clark told Mayhall.  Nevertheless, the Magistrate Judge noted that there was no other evidence in the record to corroborate what Clark allegedly told the detective about what Jelks had allegedly told him.  Clark's statement consists of multiple layers of hearsay.

10

The Magistrate Judge also found even if Clark had told the detective that Bussey denied involvement in the murder, this information would not have been material because, even without Clark's statement, Jelks had been thoroughly discredited on cross-examination. Defense counsel pointed out the many contradictory statements Jelks had made on a number of material points, and also noted Jelks' prior drug convictions. The Magistrate Judge concluded that there was not a reasonable probability that if Clark's statement had been disclosed, the result of the proceeding would have been different.

In addition, the Magistrate Judge noted that there is no *Brady* violation when the defendant knew or should have known of the existence of the exculpatory information. Mayhall's affidavit indicates that he may have discussed Clark's statement with Petitioner's attorney, and Petitioner offered no evidence to the contrary. Mayhall Aff. ¶ 9.

Petitioner appears to challenge only the Magistrate Judge's conclusion that Clark's statement was not material. He notes that even though Jelks was impeached during cross-examination, Jelks was not discredited *enough* to earn Petitioner's acquittal. As Respondent notes, this is not the relevant inquiry. The question is whether the failure to disclose Clark's statement undermines confidence in the outcome of the trial. *See United States v. Bagley*, 473 U.S. 667, 683 (1985). For the reasons set forth by the Magistrate Judge in the Report and Recommendation, this scenario does not rise to that level. The state courts did not

11

unreasonably apply *Brady* in dismissing Petitioner's claim.

Petitioner also argues that the State should have disclosed the fact that in a previous case, Jelks had received an early release from prison in exchange for his cooperation. Petitioner maintains that this shows that Jelks had an existing relationship with the State and might again be willing to make a deal. Had the jury known of this, they might have found his testimony to be less credible.

Again, the only evidence of this alleged prior deal comes from Mayhall's statement about what Clark said Jelks had told him, a statement clearly based on hearsay. The Magistrate Judge found that this was insufficient proof that the alleged *Brady* material existed.

The Magistrate Judge also stated that if Jelks had been released early from prison, defense counsel could have uncovered this fact through a public records check. Petitioner, however, denies that a public records search would reveal that Jelks received favorable treatment in exchange for his cooperation. He claims that this information was available only from the prosecutor.

In the Court's view, regardless of whether a public records search would have revealed the existence of a prior deal with the State, Petitioner has not presented sufficient evidence that such a deal existed. Petitioner's Objection with respect to this portion of his claim is therefore overruled.

Given that Petitioner has failed to make a substantial showing of the denial of a constitutional right and, further, that the Court's decision herein would not be

12

debatable among jurists of reason, Petitioner is denied a certificate of appealability. Moreover, given that any appeal from this Court's decision would be *objectively* frivolous, Petitioner is denied the ability to appeal in forma pauperis.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: August 30, 2011

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of record

13